[No. 12696.  Department Two.  November 22, 1915.]

ALICE BLAU, *Respondent*, v. PUGET SOUND TRACTION, LIGHT
& POWER COMPANY, *Appellant*.[1]

CARRIERS—INJURY TO PASSENGERS — TAKING ON PASSENGERS — SUD-
DEN JERKS—PHYSICAL LAWS—QUESTION FOR JURY.  It is for the jury,
and not for the court, to say whether it was physically possible that
a passenger, boarding a cable car, was swung around and thrown
into the seat, instead of backward into the street, when the car was
started forward with a sudden jerk, where she had stepped onto the
running board and her hold on the stanchion was loosened by the
movement of the car; since her efforts tended to counteract the
forces engendered by the movement of the car, and arbitrary de-
ductions from physical laws can be made only when so clear and
irrefutable as to exclude all others.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.  A verdict for
$4,000 for injuries sustained by a woman, entering a street car, will
not be set aside as excessive, where she received a permanent injury
to her knee which unfits her for the pursuit in which she earns her
livelihood, and it does not appear grossly disproportionate to the in-
jury.

Appeal from a judgment of the superior court for King
county, Blake, J., entered June 10, 1914, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained by a passenger on a cable car.
Affirmed.

*James B. Howe* and *H. S. Elliott*, for appellant.

*Edwin H. Flick* (*John A. Frater*, of counsel), for respond-
ent.

FULLERTON, J.—The respondent was injured while at-
tempting to board one of the appellant's cable cars as a
passenger.  She brought this action to recover for her in-
juries.  The jury returned a verdict in her favor for the
sum of $4,000, for which sum judgment was entered in her
favor in the trial court.  The traction company appeals, and

[1]Reported in 152 Pac. 1023.

assigns as error, (1) that the evidence is insufficient to justify the verdict and judgment; and (2) that the verdict is excessive.

The appellant does not deny that the evidence was sufficient to justify submitting the cause to the jury, if the respondent's testimony concerning the manner in which the accident happened is to be given credence; but it argues that her testimony in this respect is contrary to well known physical facts and laws, and invokes the rule that courts will not give credence to evidence which is contrary to such facts and laws.

The car on which the respondent was injured was operated by a cable. It was constructed particularly with regard to that form of motive power. On each end of the car, outside of the space occupied by the gripman, were placed seats for passengers, running lengthwise of the car. These seats were so placed that when a person was seated in them his feet would rest on the car floor. As a step intermediate between the ground and the floor of the car, a running board was placed, extending the full length of the seat. This portion of the car was open, save for a roof over it, which was supported by stanchions extending from the floor to the roof. The respondent, at the time of her injury, had stepped onto the running board, taken hold of a stanchion and was in the act of raising herself to the seat, when the car was started suddenly forward with a violent jerk. The effect was, as she states, to cause her to swing around towards the seat, break loose her hold on the stanchion, and throw her into the seat.

The appellant argues that the forces operating against her person engendered by the sudden forward movement of the car, when tested by the ordinary rules of physics, would have caused her to fall in another direction from that which she testifies she fell, namely, backwards into the street, and hence the court should have sustained its challenge to the testimony. But we cannot think the appellant has taken into account all of the forces operating against her at the time. The argument overlooks the force engendered by the

respondent herself which tended to counteract the forces engendered by the movement of the car. She was moving at the time of the accident in a direction different from the motion of the car; she clung to the stanchion after the car had started, and thus engendered another and counteracting force. The direction in which she would be thrown is dependent upon all of these several forces, not upon any particular one of them. "Two or more forces may act on a body at the same time. . . . In such cases each force produces an acceleration independently of the action of the other forces, and the body travels in some path with a definite acceleration which is the resultant of the accelerations produced by the separate forces." (Duff's, A Text-book of Physics.) Unless, therefore, all of the several forces acting at the time of the accident are definitely known and measured, the direction in which the body of a person would fall, when operated upon by them, cannot be certainly known. The rule governing the action of courts in such cases is well stated in *Lang v. Missouri Pac. R. Co.*, 115 Mo. App. 489, 91 S. W. 1012, in the following language:

"So frequently do unlooked for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other."

See, also, *Austin v. Washington Water Power Co.*, 68 Wash. 508, 123 Pac. 775, Ann. Cas. 1913 E. 936; *Benjamin v. Metropolitan St. R. Co.*, 245 Mo. 598, 151 S. W. 91; *Pickens v. Metropolitan St. R. Co.*, 125 Mo. App. 669, 103 S. W. 124.

In the second of the cases cited, this language was used:

"It is argued that if the car was started as the plaintiff says it was, it would be a physical impossibility for the motion to have thrown the body of the plaintiff forward to fall on her knee. The argument invokes the physical fact that

when a person is standing erect on a movable platform facing in the direction the movement is to be made, when the movement comes it will carry the feet forward quicker than the rest of the body and cause the body to incline backward. That is so, but to draw the conclusion that the learned counsel draw from that law of physics, they do not take into account the natural or involuntary resistance the person whose equilibrium is disturbed offers to the motion, especially if it is a sudden movement. In resisting the force that would throw the body backward and in the struggle to recover an upright position, the result would depend upon the force exerted either way and on which would be the greater. The court in this case could not, as a matter of law, decide what the result would be."

We conclude, therefore, that it was for the jury and not the court to say whether the accident was physically impossible, and that the trial court properly submitted the question to them.

Nor can we conclude that the verdict is excessive. The respondent received an injury to the knee, which unfits her for the pursuit in which she earns her livelihood, and which the evidence shows bears indications of remaining permanent. The amount of damages to be awarded in such cases is so far a question for the jury that courts should not interfere therewith unless it is grossly disproportionate to the injury suffered. The amount awarded in this case we cannot conclude is so.

The judgment is affirmed.

MORRIS, C. J., MAIN, and ELLIS, JJ., concur.